# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| RANDY SMITH, #264503, | ) | |
| | ) | CIVIL ACTION NO. 0:05-3142-GRA-BM |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| E. RICHARD BAZZLE, | ) | **REPORT AND RECOMMENDATION** |
| WARDEN; S.C. DEPARTMENT | ) | |
| OF CORRECTIONS; and | ) | |
| HENRY MCMASTER, | ) | |
| ATTORNEY GENERAL FOR | ) | |
| SOUTH CAROLINA; | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The pro se petition was filed on November 7, 2005.[1] On February 13, 2006, Petitioner filed a supplement to his pleadings.

The Respondents filed a return and motion for summary judgment, as well as a response in opposition to Petitioner's motion to supplement his pleadings, on February 16, 2006. As the Petitioner is proceeding pro se, a Roseboro order was filed on February 21, 2006, advising Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. Petitioner filed a response in opposition to the motion for summary judgment on March 1, 2006, and a "Traverse and Reply"

---

[1] Filing date under Houston v. Lack, 487 U.S. 266 (1988). See Order filed November 28, 2005, n. 1.



on March 27, 2006. This Petition is now before the Court for disposition.[2]

## **Procedural History**

Petitioner was indicted in September 1999 in Pickens County for conspiracy to Traffic More than One Hundred Grams of Crank (Indictment No. 99-GS-47-23). (R.pp. 399-402). Petitioner was represented by David D. Cantrell, Jr., Esquire. After a trial by jury on February 16, 2000, Petitioner was found guilty as charged. (R.pp. 1-309). Petitioner was sentenced to a term of twenty-five (25) years. (R.pp. 313, 403).

Petitioner filed a timely appeal. Petitioner was represented on appeal by Robert M Pachak, of the South Carolina Office of Appellate Defense, and raised the following issue:

> Whether the trial court erred in refusing to grant a directed verdict to the charge of conspiracy to traffic in over 100 grams of crank when the evidence presented by the State was insufficient to prove the indicted charge?

See Petition, p. 3.

The South Carolina Court of Appeals affirmed the conviction and sentence in an unpublished Opinion filed July 2, 2001. State v. Randy Smith, Unpubl.Op.No. 2001-UP-332 (S.C.Ct.App. July 2, 2001). (R.pp. 332-334). The Remittitur was sent down on July 18, 2001. (R.p. 336).

Petitioner then filed an Application for Post-Conviction Relief ("APCR") dated August 8, 2001, in which he asserted the following claim:

> The Applicant was denied his Sixth and Fourteenth Amendment rights guaranteed by the United States Constitution, and by Article 1 § 3 and Article 1 § 14, of the

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondents have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



Constitution of the State of South Carolina because of ineffective assistance of counsel prior to his trial, and after his trial.

(R.p. 319).

Petitioner later supplemented his application and asserted:

(1) Ineffective assistance of counsel in defense counsel's failing to request a mere presence and mere association charge.

(2) Ineffective assistance of counsel in defense counsel's failure to call known alibi witnesses.

(3) Ineffective assistance of counsel in defense counsel's failure to call witness Phillip Goodyear.

(R.pp. 322-323).

An evidentiary hearing was held on Petitioner's APCR on June 16, 2003.  (R.pp. 341-392). Petitioner was present and represented by W. Douglas Richardson, Esquire.  At the end of the PCR hearing, the PCR judge orally denied the Petitioner's APCR; (R.p. 391); and on July 2, 2003, the PCR judge entered a written order denying the petition in its entirety.  (R.pp. 393-398).

Petitioner filed an appeal of the denial of his APCR.  Petitioner was represented on appeal by Robert M. Dudek, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, and raised the following issues:

1) Should petitioner's case be remanded for specific findings of fact and conclusions of law where defense counsel did not take exception to the judge's failure to give a "mere presence," "mere association," and "mere knowledge" instruction where there was evidence petitioner was a user of methamphetamine, but that he was just present while it was being cooked by others?

2) Was defense counsel ineffective for failing to call available alibi witnesses, or available impeachment witnesses or fact witnesses who had testimony that would have assisted petitioner's defense since the failure to utilize available witnesses to cast grave doubt on the testimony of the state's two star witnesses about petitioner allegedly manufacturing crank constituted ineffective assistance of counsel?



<u>See</u> <u>Petition</u>, p. 2.

The South Carolina Supreme Court denied certiorari in an unpublished order filed October 6, 2005.

<u>See</u> Letter Order filed October 6, 2005.  The Remittitur was issued on October 24, 2005.

   In his <u>pro se</u> Petition for writ of habeas corpus in the United States District Court,

Petitioner raises the following claims:

> **Ground One:**  Counsel was ineffective in that he failed to call known alibi and impeachment witness (in violation of 6th and 14th Amendments).

> **Ground Two:** Counsel failed to require trial court to charge "mere presence", denying Petitioner's 14th and 6th right to effective Asst.

> **Ground Three:** Petitioner was denied 14th Amend. Right to Due Process at trial when trial ct. failed to grant my motion for directed verdict.

<u>See</u> <u>Petition</u>, pp. 6-9.

### <u>Discussion</u>

   Respondents have moved for summary judgment pursuant to Rule 12 (b) and Rule

56 (b), Fed.R.Civ.P., submitting that the entire Petition is without merit.  Summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P; <u>see</u>

Habeas Corpus Rules 5-7.  Further, while the federal court is charged with liberally construing

pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case;  <u>See</u>

<u>Cruz v. Beto</u>,  405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of

liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege

facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of

material fact where none exists.  <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

4

# I.

In Ground One of his Petition, Petitioner contends that his counsel was ineffective for failing to call known alibi and impeachment witnesses.[3] This issue was raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR court rejected this claim, and made relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Smith v. State of South Carolina, No. 2002-CP-39-882. The PCR judge found: 1) that the testimony from the Petitioner and his witnesses was not credible on the issues in this case; 2) that trial counsel's testimony was credible; 3) that Petitioner failed to carry his burden of proof in this case; 4) that it was not deficient performance to refuse to call any of the alleged alibi or defense witnesses brought out at the PCR hearing; 4) that the testimony that they presented, as trial counsel asserted, would not have been helpful, and in some cases would actually have had a negative impact on the Petitioner's case; 5) that trial counsel articulated that he believed a successful defense hinged on obtaining the final argument; 6) that given the circumstances of the case, that strategy was valid and reasonable; 7) that regarding the advice not to plead guilty, counsel's performance did not fall below reasonable professional standards; 8) that the case hinged upon the testimony of two co-defendants, both of whom were thoroughly cross-examined and impugned during trial counsel's arguments; and 9) that Petitioner has failed to show that, but for trial counsel's alleged errors, there is a reasonable probability that the result would have been different. (R.pp. 396-397).

---

[3]Petitioner specifically references four (4) individuals who should have been called: Janet Cantrell, Lee Holcome, Brian Gilstrap and Phillip Goodyear.



Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion.  Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000).  Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

6



of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell, 88 F.3d at 269.

Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. At his PCR hearing, Petitioner specifically offered the testimony of Holcombe, Cantrell, Gilstrap, and Goodyear, all of whom Petitioner contends should have been called as alibi witnesses at his trial. This testimony can be summarized as follows: Lee Holcombe, Petitioner's boss, testified that he wasn't aware of Petitioner participating in any meth conspiracy, but when asked if he kept track of, or hung



out with the Petitioner after work, Holcombe responded, "mainly, I'd go home and he'd go home." (R.p. 359).  Petitioner's sister, Janet Cantrell, testified that Petitioner lived in a camper outside of her home and that he would come home if he did not get finished too late. (R.p. 361).  On the nights when Petitioner did not come home, Cantrell testified that she had no knowledge of where he actually was other than what Petitioner told her. (R.p. 363).  Brian Gilstrap, one of Petitioner's co-conspirators, testified that Petitioner never cooked meth at his home and that he had never seen Petitioner cook meth. (R.pp. 364-365).  Phillip Goodyear testified that he was incarcerated at the same time as Sammy Ross, the State's witness against the Petitioner, and that  Ross told him that he and his wife, Betty Ross, were going to testify against the Petitioner in order for them both to get a deal with the State.   Ross was also mad at Petitioner because he thought Petitioner might be having an affair with his wife. Goodyear testified that he met the Petitioner after the first day of Petitioner's trial (when they were in cells at the jailhouse) and told the Petitioner that he was willing to testify for the Petitioner as to those facts. (R.pp. 368-371).  Petitioner testified that while his counsel was aware of these potential witnesses, he did not call them at his trial. (R.pp. 346-351).

Petitioner's counsel testified that he met with Holcombe, but  that since Petitioner was charged with an ongoing conspiracy, he did not consider Holcombe's testimony that Petitioner worked for him and spent a lot of time with him as an alibi. (R.pp. 378-379).  As for Petitioner's sister, she could not testify that Petitioner was always with her. (R.p. 380).  Counsel stated that,

> I did not feel that those witnesses and what value they may have would outweigh something that we discussed right up until the State closed its case; and that is, it was our intent and it was our plan not to present a defense for two reasons -- one being that we believed that that would tend to minimize in the eyes of the jury the evidence, saying, Ladies and Gentlemen of the jury, you've heard two codefendants that are here to do nothing but cover themselves; and secondly, I didn't feel that our witnesses would outweigh the benefit to keeping the final argument, and I knew that I was not going to call [Petitioner] as a witness.



(R.p. 380).

Counsel also testified that he did not feel that Gilstrap was a good witness because he was not credible or reliable, and because his association with the Petitioner would have given the jury even more opportunity to believe that Petitioner was involved in the Methamphetamine business. (R.pp. 383-386). As for the Rosses, it was established before the jury at Petitioner's trial that they were receiving deals as a result of their testimony against the Petitioner, which is what Goodyear had offered to testify about. (R.pp. 169-170, 218-219, 228-230, 263). Counsel believed therefore that it was more important to maintain his ability to have the last argument before the jury with no rebuttal by the prosecutor than to call any of these witnesses. (R.pp. 376-389).

        The undersigned agrees with the PCR court's finding that Petitioner's counsel was not ineffective for failing to call these witnesses. (R.pp. 396-397). While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. Id. at 688-689; Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), cert. denied, 505 U.S. 1230 (1992); Horne v. Peyton, 356 F.2d 631, 633 (4th Cir. 1966), cert. denied, 385 U.S. 863 (1966); Burger v. Kemp, 483 U.S. 776 (1987); see also Harris v. Dugger, 874 F.2d 756, 762 (11th Cir. 1989), cert. denied, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.]. After a review of the record in the file consistent with the applicable caselaw, the undersigned does not find that Petitioner has shown his counsel was

9



deficient on this basis, nor has he shown the necessary prejudice.   <u>Strickland v. Washington</u>, <u>supra</u>.

Petitioner has also failed to show that the state court's rejection of this claim was unreasonable. <u>Evans</u>, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; <u>Williams v. Taylor</u>, <u>supra</u>. <u>Bell</u>, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].   Petitioner's claim that his counsel was ineffective on this ground is therefore without merit, and should be dismissed. <u>Fisher</u>, 215 F.3d at 446-447 [Court reviewed petitioner's ineffective assistance of counsel claims under the standards set forth in 28 U.S.C. § 2254(d)].

## II.

In Ground Two of his Petition, Petitioner contends that his counsel was ineffective in failing to object to the court's failure to give a previously requested charge of mere presence where the evidence supported a charge for mere presence.

Although the Petitioner  raised this issue in his APCR, the PCR judge did not specifically address this issue in his written order.  (R.pp. 322, 375-377, 393-398).  The Petitioner requested in his PCR appeal that the PCR judge be required to make specific findings on this issue. <u>Petition</u>, p. 2. Before the South Carolina Supreme Court, the Respondents argued, <u>inter</u> <u>alia</u>, that "the PCR court implicitly ruled upon this issue in its findings that trial counsel did not render deficient performance and that the [Petitioner] suffered no prejudice from any alleged errors", and



discussed the claim on the merits.  <u>See</u> Return to Petition for Writ of Certiorari, pp. 3-4. Respondents also argued that, "[e]ven if the PCR court's ruling did not cover this issue, any such error is not preserved, as PCR counsel did not file any post-hearing motions to obtain a specific ruling on that issue." <u>See</u> Return to Petition for Writ of Certiorari, p. 4. Before this federal court, however, Respondents only argue that this claim is procedurally defaulted due to Petitioner's failure to obtain a ruling from the PCR court which could be reviewed on appeal.

The Respondents are correct that it is the duty of PCR counsel to move pursuant to Rule 52 or 59, SCRCP, to correct any oversights or omissions in the final order to preserve issues for appeal.  <u>See</u> <u>McCullough v. State</u>,  464 S.E.2d 340, 341 (S.C. 1995); <u>Pruitt v. State</u>, 423 S.E.2d 127, n. 2 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]; <u>Plyer v. State</u>, 424 S.E.2d 477 (S.C. 1992)[same]; <u>Al-Shabazz v. State</u>, 527 S.E.2d 742, 747 (S.C. 2000)["Either party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order."].  Here, the PCR judge did not rule on this issue in his written order[4] and there is no evidence that a Rule 52 or 59 motion was filed to request a ruling on the issue.  Therefore, this issue is barred from further state collateral review; <u>Whiteley v. Warden, Wyo. State Penitentiary</u>, 401 U.S. 560, 562 n. 3 (1971); <u>Wicker v. State</u>, 425 S.E.2d 25 (S.C. 1992); <u>Ingram v. State of S.C.</u>, No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); <u>Josey v. Rushton</u>, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); <u>Aice v. State</u>, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there is no current state remedy for Petitioner to pursue this claim, it is

---

[4]While the PCR judge also orally denied the Petitioner's claims at the hearing, he did not address this specific claim at that time.



fully exhausted.  Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.[5]

Since this issue was not preserved for appeal by the Petitioner, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence.  Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

---

[5]This claim was not presented to the state Supreme Court in Petitioner's certiorari petition. Rather, the argument that the PCR judge should be required to issue findings on this claim was presented. The South Carolina Supreme Court denied certiorari on this claim in the previously referenced unpublished opinion.

12



<u>Coleman</u>, 501 U.S. at 750.

With regard to the "cause" requirement, Petitioner argues that his PCR counsel's ineffectiveness resulted in the procedural default. The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>see</u> <u>also</u> <u>Coleman v. Thompson</u>, <u>supra</u>; <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991); <u>Noble v. Barnett</u>, 24 F.3d 582, 586, n.4 (4th Cir. 1994)("[C]onstitutionally ineffective assistance of counsel is cause <u>per se</u> in the procedural default context"); <u>Smith v. Dixon</u>, 14 F.3d 956, 973 (4th Cir. 1994)(en banc). However, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute such "cause" if it amounts to an independent violation. <u>Ortiz v. Stewart</u>, 149 F.3d 923, 932 (9th Cir. 1998); <u>Bonin v. Calderon</u>, 77 F.3d 1155, 1159 (9th Cir. 1996). Here, Petitioner has failed to show the necessary "cause" for his procedural default because the counsel that failed to move for a corrected order was his counsel in his postconviction proceeding. Ineffective assistance of *PCR counsel* does not amount to an independent constitutional violation under the applicable caselaw, and is not therefore "cause" for a default. <u>Murray v. Giarratano</u>, 492 U.S. 1-7, 13 (1989) [O'Connor, J., <u>concurring</u>] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; <u>Mackall v.</u>



<u>Angelone</u>, 131 F.3d 442, 447-449 (4th Cir. 1997); <u>Ortiz</u>, 149 F.3d at 932; <u>Pollard v. Delo</u>, 28 F.3d 887, 888 (8th Cir. 1994); <u>Lamp v. State of Iowa</u>, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); <u>Parkhurst v. Shillinger</u>, 128 F.3d 1366, 1371 (10th Cir. 1997); <u>Williams v. Chrans</u>, 945 F.2d 926, 932 (7th Cir. 1992); <u>Gilliam v. Simms</u>, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998). Therefore, Petitioner cannot demonstrate cause for his default based on this argument.

However, as part of his supplemental filing, Petitioner has submitted exhibits to show that he did not receive a copy of the PCR order in time to timely file a Rule 59 motion.[6] According to these exhibits, Petitioner's PCR counsel apparently informed Petitioner that he was no longer representing him after the PCR judge orally denied Petitioner's petition. However, there is no evidence in the record to show that the PCR court was so informed, and based upon the documentation in the record, it appears that the final PCR order was not actually sent to the Petitioner until after the time had expired for him to file a timely Rule 59 motion. Accordingly, Petitioner also argues as "cause" that he did not receive a copy of the written order in time to file a proper Rule 59 motion. The undersigned offers no opinion as to whether Petitioner could have pursued the matter with the PCR court since did not receive a copy of the PCR court's written order until after the time to file a Rule 59 motion had expired. <u>Cf</u> Rule 60(b), SCRCP. However, for purposes of Respondents' motion for summary judgment, the undersigned has assumed "cause" based on these exhibits and arguments in order to allow for further discussion of the <u>pro</u> <u>se</u> Petitioner's claim. <u>Cruz v. Beto</u>, <u>supra</u>.

---

[6]Respondents object to consideration of Petitioner's exhibits from his supplemental filings. However, the affidavit and exhibits presented are material to the question and claim at issue, and the undersigned has therefore considered the information in Petitioner's affidavit relating to his "cause" for his procedural default along with the supporting documentation in issuing a recommendation on this claim.



Even assuming Petitioner has demonstrated cause for the procedural default, however, it would still be necessary for him to demonstrate actual prejudice as a result of an alleged violation of federal law or, in the alternative, demonstrate that failure to consider the claim would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. "Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court." Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991). Prejudice has been defined as a denial of 'fundamental fairness'. A "showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied fundamental fairness at trial." Murray v. Carrier, 477 U.S. at 493. More than "plain error" is necessary to establish "prejudice". Engle v. Isaac, 456 U.S. 107, 134-135 (1982). A mere possibility of prejudice also fails to satisfy the actual prejudice prong of the cause and prejudice test. United States v. Shaid, 937 F.2d 228 (5th Cir. 1991), cert. denied, 112 S.Ct. 978 (1992).

Here, the undersigned has reviewed the trial and post-conviction proceeding transcripts, as well as the pleadings and other exhibits filed by the parties, and does not find that actual prejudice has been presented even if the "cause" prong of the "cause and prejudice" test has been satisfied. Wright v. Angelone, 151 F.3d 151, 159-162 (4th Cir. 1998). The facts must support a jury instruction for it to be proper. State v. Crosby, 559 S.E.2d 352, 355 (S.C. 2002). Mere presence instructions are warranted only when the evidence presented supports the conclusion that the defendant was "merely present" at the scene where the drugs were found and it is questionable whether the defendant had a right to exercise dominion and control over them. See Brunson v. State, 477 S.E.2d 711, 713 (S.C. 1996). In Petitioner's case, Mrs. Ross testified

15



that Petitioner was learning to "cook" methamphetamine at Prince's residence, and that Petitioner "walked out of there [Prince's residence] every day with something [some amount of drugs]." (R.pp. 186-189, 204). Mr. Ross testified that he had seen petitioner assisting in the methamphetamine production; (R.p. 245); while Petitioner's own statement, which was admitted in a limited capacity, established that he had been to the Prince residence numerous times and had received drugs from Prince. (R.p. 146).

Respondents argue that based on the record of Petitioner's trial there was no evidence to support a "mere presence" charge, and the undersigned agrees that, although the trial judge had expressed a willingness to give a mere presence charge,[7] the record does not reflect sufficient evidence to establish that such a charge was required. Furthermore, even assuming that a mere presence charge could have been given, Petitioner has not shown the likelihood of a different outcome. The trial judge charged the jury, "before this Defendant can be found guilty of the offense of which he is charged you must be satisfied beyond a reasonable doubt that he is guilty." (R.p. 295). The trial judge also specifically charged the jury on conspiracy to traffic, as follows:

> A conspiracy is the combination or agreement of two or more persons to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means. The gist of the offense is a combination or agreement to disobey or disregard the law. When one person agrees with another to do an illegal act then that person may be found guilty of committing the crime of conspiracy. In order to establish the offense of conspiracy the State must show, one, that a Defendant and one or more persons willfully joined together as members of the conspiracy. Two, that the conspiracy existed at the time alleged in the indictment, and three, that in furtherance of the conspiracy one or more of the Defendant's knowingly committed at least one of the overt acts charged in the indictment. The fact that the *Defendants may be associated*

---

[7]Petitioner's counsel apparently requested a mere presence charge, and the trial judge had apparently agreed, at least initially, to give such a charge. (R.pp. 224-225, 264-265). However, when the time came the trial judge did not give the "mere presence" charge and Petitioner's counsel did not thereafter take exception to the charge. (R.p. 305).



> *with each other and may have assemble together and discussed common aims and*
> *interest does not necessarily establish proof of the existence of a conspiracy.*
> Furthermore, the mere fact that one or more of the Defendants may have engaged in
> the performance of any of the acts charged in the indictment as overt act would not
> authorize a conviction by reason of that fact alone.

(R.pp. 301-302)[emphasis added].

Petitioner has presented no evidence or arguments to convince this Court that this charge was not

sufficient, or that a "mere presence" charge would have made any difference in the outcome of his

trial, other than his own self-serving speculation. Cf Carelock v. South Carolina, No. 05291, 2006

WL 1074908, at *11 (D.S.C. Apr. 20, 2006)[finding that, in light of the charge as a whole, there was

no reasonable probability the result would have been different had a mere presence charge been

given].

Accordingly, even assuming Petitioner could establish cause for his procedural

default, he has failed to show the necessary prejudice to proceed on this claim.  See 28 U.S.C. §

2254;  Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035

(1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into

Federal Court."]; Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.), cert. denied, 519 U.S. 1016

(1996) [In order to show prejudice a petitioner must show that there is a reasonable probability

that, but for counsel's errors, the result of the proceeding would have been different.]; Wainwright

v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a

fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional

violation has probably resulted in the conviction of one who is actually innocent"](citing Murray

v. Carrier, 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v.

Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995). This issue is without merit and should be



dismissed.  See 28 U.S.C. § 2254(d)(1) and (2); Williams v. Taylor, supra.

### III.

In Ground Three of his Petition, Petitioner argues that the trial court erred in failing to grant a directed verdict.  Specifically, Petitioner argues that "[a]t two points in my trial, my attorney requested a directed verdict, and the trial court refused to grant a directed verdict.  The only evidence against me was two convicted drug dealers word who wanted easy sentences for testifying against me.  There was evidence that I used Meth, but no evid[ence] I conspired to make it." Petition, p. 9.

This claim, which was presented by Petitioner in his direct appeal, goes to the sufficiency of the evidence. While such a claim is cognizable on collateral review, a federal court's review of such claims is "sharply limited." Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998), cert. denied, 525 U.S. 1012 (1998)(quoting Wright v. West, 505 U.S. 277, 296 (1992)); see also Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir. 1994)["The standard is obviously rigorous."] "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." Wilson, 155 F.3d at 405-406 (citing Wright, 505 U.S. at 292).  Therefore, Petitioner is entitled to relief on this ground only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" based on the evidence presented. Wilson, 155 F.3d at 406 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)); see also George v. Angelone, 100 F.3d 353, 357 (4th Cir. 1996).

In South Carolina, conspiracy is a combination or agreement between two or more persons for the purpose of accomplishing a criminal or unlawful object. State v. Vasquez, No.



3217, 2000 WL 987138, at ***2  (S.C.Ct.App. July 17, 2000); State v. Gunn, 437 S.E.2d 75,

80 (S.C. 1993), cert. denied, 510 U.S. 115 (1994).  While the conspiracy may be proven by the

specific overt acts done in furtherance of the conspiracy, the gravamen of the offense of conspiracy

is the agreement, combination, or mutual understanding.  State v. Wilson, 433 S.E.2d 864, 868

(S.C. 1993); State v. Gunn, supra.  A formal or express agreement need not be proven.  State v.

Horne, 478 S.E.2d 289, 293  (S.C.Ct.App. 1996) ["A tacit, mutual understanding, resulting in

the wilful and intentional adoption of common design or plan by two or more persons is sufficient,

provided the common purpose is to do an unlawful act either as a means or an end"].  Further,

a conspiracy does not require overt acts.  Rather, the substantive crimes committed in furtherance

of the conspiracy simply constitute circumstantial evidence of the existence of the conspiracy, its

object, and scope.  Wilson, 433 S.E.2d at 868.  Moreover, an inference may be drawn from the

overt acts as to the existence and object of the conspiracy.  Id.

"Once a conspiracy has been established, evidence establishing beyond a reasonable

doubt the connection of a defendant to the conspiracy, even though the connection is slight, is

sufficient to convict him with knowing participation in the conspiracy."  Horne, 478 S.E.2d at

294.  "Further, 'the acts and declarations of any conspirator made during the conspiracy and in

furtherance thereof are deemed to be the acts and declarations of every other conspirator and are

admissible against all.'"  Id. at 294 (quoting State v. Sullivan, 282 S.E.2d 838, 842 (S.C. 1981)).

Here, there is substantial evidence in the record to show Thomas Prince's

participation in the conspiracy.  (R.pp. 56-57, 60-68, 131-146, 175-181, 189-193, 241-243, 248).

The evidence further showed that Pickens County Sheriff's Officers responded to a "disturbance"

at Prince's property on May 1, 1999, and that Petitioner was at the residence when the officers



arrived.  Officers discovered a clandestine crank lab equipped with large tanks of anhydrous ammonia, gas cans, aquarium pumps, mason jars, Tupperware containers, crushed Sudafed tablets, and boxes of starting fluid containing ether.  (R.pp. 55-57).  The evidence showed that the lab found on Prince's property had been utilized to manufacture crank.  (R.pp. 131-141).  Petitioner was taken into custody and was interviewed after being given Miranda warnings.  (R.pp. 142-144).  Petitioner admitted to the following information during that interview:

> He [Petitioner] told me that he, indeed, used methamphetamine.  That the longest high that he had ever been on -- meaning the longest time he had ever been up on the drug had been five or six days.  He also stated that he'd used methamphetamine that had been given to him by Mr. Prince.  That Mr. Prince had given him a quarter to half a gram of the drug, methamphetamine on several different occasions.  That he had been to Mr. Prince's residence, probably, a dozen times.

(R.p. 146).

Mrs. Ross, who was also indicted on charges involving meth, testified:

> Q.  Was there ever an occasion in January of early 1999 when you observed [Petitioner] at Mr. Prince's property?
>
> A.  Yes, sir.
>
> Q.  Please tell the jury about that in terms of how that would relate to drug activity or manufacturing?
>
> A.  [Petitioner] would come over to Mr. Prince's house and he was taught to cook by Mr. Prince just like I was.  There were several others who were taught, too.

(R.p. 187).

Mrs. Ross also testified that "[a]ll three of us [Ross, Prince and Petitioner] cooked.  I stood there - I handed them materials as they were needed.  We all three participated in this cook," and explained in detail the crank manufacturing process they utilized.  (R.pp. 189-192).  Mrs. Ross testified that from January to April of 1999, Petitioner was over at the Prince Property almost every day, and



estimated that each crank manufacturing session would produce anywhere from one gram to six ounces, depending on the amount of ingredients used.  (R.pp. 193, 201).  The prosecutor asked Mrs. Ross to give a conservative, but accurate estimate of the amount of crank that Petitioner had assisted in manufacturing at Prince's property prior to the lab being discovered by the police:

> Q.  Based upon your personal observations of [Petitioner] helping Mr. Prince cook the methamphetamine at Mr. Prince's residence can you estimate and give us the most conservative figure, the lowest amount that you believe [Petitioner] could have on a weekly basis manufactured at Mr. Prince's house from January 1999 through May of 1999 or until May 1st of 1999?
>
> A.  A lot.
>
> Q.  Well, we need a number.
>
> A.  Okay.  Well --
>
> Q.  If you don't know you can say I don't know, but if you can give an estimate within some reasonable figure please do so and make it a conservative figure?
>
> A.  Okay.  I'll explain it like this.  Some days [Petitioner] walked out of there with an ounce, you know, if we were cooking every day....Some days he walked out of there with an 8-ball [one-eighth ounce].  He walked out of there every day with something.
>
> Q.  Okay.  Based upon your observation do you know whether or not [Petitioner] appeared to be one of the more predominate individuals in this or was he less predominate compared to the other people . . . ?
>
> A.  He was more predominate.

(R.pp. 203-204).

Mrs. Ross also testified that after Prince's lab was confiscated in May of 1999, she and the Petitioner continued to manufacture methamphetamine.  (R.p. 204).  Mrs. Ross specifically testified about Petitioner manufacturing meth on Steven Cadell's property, and that he assisted in moving the operation to Gilstrap's property.  (R.pp. 207-208, 210).



Mr. Ross also appeared at Petitioner's trial, and testified that Petitioner was present at Prince's property during manufacturing sessions, that Petitioner picked up manufacturing materials at the hardware store for Prince; (R.pp. 241-242); and that after police found the drug manufacturing lab on Prince's property, Petitioner continued to manufacture crank at other locations. (R.pp 241-242, 245).

The undersigned does not find that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" based on this evidence; <u>Wilson</u>, 155 F.3d at 406; <u>Jackson</u>, 443 U.S. at 324; <u>see</u> <u>also</u> <u>George</u>, 100 F.3d at 357; and since there is evidence in the record to support the charge of conspiracy to traffic more than one hundred grams of crank, Petitioner has not shown that the state court erred in denying his request for a directed verdict. <u>State v. Vasquez</u>, <u>supra</u>; <u>State v. Gunn</u>, <u>supra</u>; <u>State v. Wilson</u>, <u>supra</u>; <u>State v. Horne</u>, <u>supra</u>; <u>Evans</u>, 220 F.3d at 312.. Therefore, this claim is without merit and should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Respondents' motion for summary judgment be **granted**, and that this Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

July   17, 2006



## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, a result contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

<u>See</u> <u>also</u> <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See <u>Wright</u>, <u>supra</u>,; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**901 Richland Street Columbia, South Carolina 29201**
